The court took time to deliberate, and afterwards delivered the following decree:
There are two points in this cause.
First. Whether the legacy to the complainant is a vested legacy, or a mere contingent interest, subject to be defeated on failure of the condition annexed to it.
Second. Whether this court ought to exercise those, extraordinary powers with which it is vested to overrule the dispositions made by testator in his will. •
As to the first point, we cannot consider the legacy to the complainant as a vested legacy, consistently with those established and strict rules, which are laid down, in the- books; for there is not annexed to it either certainty as to the time of payment, or the person to take. The time of payment is not till the death of testator’s ■wife, which is uncertain; and then it is on condition that the complainant survives her; if not, it goes over to his children; and if he leaves no child, then to his brothers *532 and sisters; "but if they should all die befoi’e the tcstator'b wife, then to their children. As this therefore is not a vested legacy, in which case the complainant would be entitled to the interest arising thereon, we must consider the case on its own intrinsic merits; and notwithstanding ' ^ this objection, determine whether we can, without a violation of the essence and true principles on which those rules are founded, extend some relief to the distressed objects now before us, praying for the interposition of this court, for that purpose. It is notorious, that courts of equity have of late very much relaxed their rigid rules of construction, and have conformed their decisions more to the circumstances of the cases immediately before them, than to former precedents, where they have been considered as partaking more of the strict rules of common law, than the more liberal rules of the court of equity. The following observation by one of the most enlightened judges that ever sat on the chancery bench, we think a striking and just one, namely, “ in cases of this kind,” he says,“ how far a legatee who is not entitled to the payment of his legacy immediately, shall have interest in the moan time, depends upon particular circumstances. Some upon relationship, some upon the necessities of legatees, and most of them upon the particular penning of mils; and there is hardly one case which can be cited, that is a precedent for another.” "With respect however to the case before us, we are not without a precedent to direct our judgment; for the case of Woodbcrry vs. the executors of Collins, is as nearly assimilated to the present, as two cases can be. The words of Collin’s will arc, “ I give to my granddaughter, Mary Woodbcrry the following negroes, namely, Big Jack and 1000Z. which money to he made by my said negroes before they shall be divided; but should my said granddaughter Mary Woodbcrry, depart this life before she arrived at the age of twenty-one yeans, and shall have no issue, then in that case my will is, that aforesaid negroes Big Jack, &c. and the 1000Z. should be divided between the following persons, Dr. MtGrejor and others.” According to strict rules this is no vested legacy; for she *533 can only be entitled to it under the condition annexed to it, namely, her attaining twenty-one years of age; on failure of which, it is limited over to others. It is not a gift by a parent who is bound to maintain his child, and out of whose legacy this court would allow interest, if not so directed by the parent. But by the same rules it is considered as a gift by a stranger. Yet the court on a representation, that the father of the infant was incapable of giving her either maintenance or education, made a reasonable allowance out of the legacy for those purposes. What is the case before us ? The complainant or his children, will at a future day, be entitled to a considerable estate; but until that day arrives, they must remain in such a state of penury as to want almost all the necessaries of life, and consequently every means of education; unless this court can extend to them some present means for those purposes out of this large estate in expectancy. And why should not this reasonable application he complied with ? Because, it is said, this is not a vested legacy, and therefore the interest must be made an accu-mulatory fund, until the period arrives when the legatee would he entitled to the legacy. We think ourselves warranted on every principle of sound justice, and of precedents, to extend such relief as the nature of the caso will bear us out in administering. It will here be proper to state this part of the case more at large than we have as yet done. The testator, Henry Pcronneau gives to his wife an annuity of 3001. to other persons legacies to the amount of 6200Í. payable on the death of his wife; the rest of his estate he gives, devises and bequeaths to the complainant if he survives the testator’s wife; if not, to his children. The estate is represented to be nearly 20,000l. in value. It will require 75001. to be placed in the funds directed by testatoi’, to raise the annuity of 300L The balance will probably produce an interest of 600 or 7001. per annum. If then an allowance is made for the relief of the complainant’s family, out of this latter fund, where is the possible injury which can arise to any one? We can see none. The widow of the ís‘<datar can receive none; the other legatees can receive *534 Hone; their legacies being pecuniary must be paid with the last farthing of the estate: the residuary legatees can take nothing until the pecuniary legatees are satisfied. As to the possibility that the present complainant may die before he comes into possession of the estate, and therefore what may now be allowed may ultimately prejudice his children, can by no means be a sound objection; for his application is not on his own account, but principally for the support of those very children, who might possibly he entitled to this estate. Can this work an injury to them ? Every rational mind must contemplate it in the reverse. But should they come hero at a future day and say so, they would conic with so ill a grace, as Hover would entitle them to be countenanced by this court. Besides the relief to be given can and will be. so modelled by this court, that it shall appear that they were the peculiar objects contemplated by us, at the moment of granting that aid, which is prayed for their particular benefit,
As to the second point, whether this court will restrain the executor in this country from doing that which by the will of the testator lie is directed to do ? A great variety of precedents will warrant us in doing so. The first and most striking one is that of Baker -as. the executors of B. Elliot. In that case, although the will of B. Elliot expressly mentions that no part of his lands should he sold, yet it being represented by his executors that the estate was so much in d.ebt as to exhaust the whole income in payment of interest alone, that the personal estate being first liable for payment of his debts, particularly the negroes, and without them the lands 'would become unproductive and a burthen. That in such event the minor, his only child would he deprived of the means of support or education; that if on the contrary this court would authorise a sale of a part of the lands, reserving so much thereof as woidd ho sufficient to work the negroes, the minor would have a competent support therefrom, which would be evidently for his advantage-. The court directed a sale of the lands on these grounds: That could the testator have foreseen the very material alterations the circumstances of this country had under *535 gone, since the making of his will (it having been made in 1773) and since Inis death, he never would have insert-cd such prohibitions in his will. That it was not only for the advantage of the minor that this court should in-ieriere, but to save his estate from ruin. We did therefore interfere and directed a sale of so much of the lands as was sufficient to pay the debts and legacies, in lieu of the negroes, which would otherwise have been sold. Since that decision this court have made several others of a similar nature. If then in these cases we have restricted the dispositions of testators, where such restrictions have tended to the benefit of those who wore intended to have been benefited by the testator himself, but who would instead of being benefited, be materially injured by a rigid adherence to the disposal made by the testator; surely then this is a case which calls on us, in as perceivable terms for our interference, as any which has yet come before us. We have nothing to do with what were the testator's political principles; we ai'e to consider him like any other man setting down to perform what is always supposed to he one of the last acts of his life; in taking a minute view of the situation of his affairs, and of those who are the objects of his affection and bounty, he disposes of his estate in such manner, as in his best judgment will be most beneficial for those who are at a future day to enjoy it; but if before that day arrives, the circumstances of that country where he had directed his property to be fixed, had undergone so material an alteration, as to render it at least hazardous to fulfil such Ms directions; and which it was impossible for him to have foreseen, is there not the highest degree of probability that had he. been now alive, he would have altered that disposition, and sought for some more certain fund to place his money in ? We must conclude that he, as every ether prudent man, would have done so. Ought we not then to do that, which it is morally certain the testator himself, under these circumstances would have done ? Wre certainly ought; and the court is well warranted in this decision, because a material benefit will he thereby rendered to one party, and no possible injury done to the *536 other. Who and where are the persons that are to take the residuary estate after the death of testator’s widow, and payment of the pecuniary legacies ? They are com piainant or his children; natives and citizens of this state, who reside and will most pi’obably end their days here. The defendant and the greatest part of his testator’s estate being here under the immediate control of this court, it would be extremely unwise and impolitic to per - mit him to remove the whole of the property to another country, totally out of the jurisdiction of this court. If a sum of money sufficient to raise the annuity for the widow is remitted to the executors in England, to be vested in government securities, it is all slie can in justice require: and as the legatees are not entitled to payment till the widow’s death; in that event there will be more than sufficient in that country to discharge all their demands on the estate: to go beyond that would be reducing the residuary legatee, at a future day, on the death of the widow, to the necessity of crossing the Atlantic, to. recover his property, at a certain great expense and risk, and perhaps an infinite loss of time; if the executors on that side of the water should be disposed to contest his right, which it is not improbable they would, from the disposition they shew to get the whole property into their possession.
In order therefore that the respective rights and claims of the parties may be justly and equitably preserved and protected, we do order and decree, that the defendant (as soon as he can possibly collect the debts due his testator) remit to the executors in England, to be by them vested in government securities, so much money as (in addition to what they already possess) shall be sufficient to secure to the testator’s widow the annuity bequeathed to her. It is further ordered, that the defendant do and shall hereafter retain and keep in his custody and power, all such other monies belonging to his testator’s estate as he may receive; and from time to time place the same at interest in the funds of this, or the United States, or other good security, for the benefit of complainant or such other persons as shall, on the event *537 of the widow’s death, become entitled thereto; paying thereon to complainant such sum or sums of money as shall be at any time allowed and directed by the court for the maintenance and education of his children. And the master is hereby directed to enquire and report what may be an adequate allowance for the present maintenance and education of the complainant’s children. Also that the complainant do annually account before the master for the sum of money so to be allowed; and to be at liberty to apply to the court by petition for an additional allowance, as his family may increase in number and years. And lastly, that the costs be paid out of the estate.